UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------X

CARA CASTRONUOVA,

                      *Plaintiff,*

    -against-

META PLATFORMS, INC.; X CORP.;
VIVEK MURTHY in his official capacity
as United States Surgeon General;
JOSEPH R. BIDEN, JR., in his official
capacity as President of the United
States;

                    *Defendants.*

-------------------------------------X

**MEMORANDUM AND ORDER**

23-CV-7511(KAM)(AYS)

**KIYO A. MATSUMOTO, United States District Judge:**

    Plaintiff Cara Castronuova ("Plaintiff"), by her counsel, filed the complaint in the instant case on October 7, 2023, seeking declaratory relief, injunctive relief, and damages against defendants Meta Platforms, Inc. ("Meta"), X Corp., Surgeon General of the United States Vivek Murthy ("Murthy"), and President of the United States Joseph R. Biden, Jr. ("Biden") (Defendants Biden and Murthy together, the "federal Defendants"). (*See generally* ECF No. 1, Complaint ("Compl.").) Plaintiff asserts claims arising under the Constitution, 42 U.S.C. § 1983, and state law. (*Id.*) Defendants Meta and X Corp. have moved to transfer the case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

For the reasons that follow, Defendants' motion to transfer is GRANTED.

Separately, on March 22, 2024, the Court ordered Plaintiff to show cause why the complaint should not be dismissed for failure to properly serve defendants pursuant to Fed. R. Civ. P. 4(m). Plaintiff responded on March 29, 2024, and April 8, 2024. (*See* ECF Nos. 26-30.)  For the reasons that follow, the Court DISMISSES the action without prejudice against federal Defendants Biden and Murthy due to Plaintiff's failure to effectuate service within 90 days after the complaint was filed, as prescribed by Fed. R. Civ. P. 4.

## I.   BACKGROUND

### A.   Factual Background

Plaintiff brings claims against Defendants arising under both federal and state law. (*See generally* Compl.)  Plaintiff alleges in her complaint that she is a "public figure" who has moved into journalism "as a reporter at The Gateway Pundit and Newsmax." (*Id.* at ¶19.)  Plaintiff alleges that she has "become active politically" and participated in a variety of political activities from 2020 forward. (*Id.* at ¶¶20-25.)  Plaintiff alleges that after participating in a political rally, her "main Facebook[1] account

---

[1] Plaintiff refers to Defendant Meta as "Facebook" throughout the Complaint, alleging that Meta was "formerly Facebook, Inc." and operates the Facebook platform. (Compl. at ¶¶10, 48.)

was suspended permanently without any warning." (*Id.* at ¶25.) Plaintiff alleges that the deactivation of her Facebook account prevented her from connecting with other individuals and taking advantage of economic opportunities. (*Id.* at ¶¶26-31.) Plaintiff also alleges that she has been "shadow-banned[2]" by Twitter[3] and that none of her "postings or forwards are permitted to be seen." (*Id.* at ¶33.) Plaintiff alleges that "when she attempts to send a message out, it is automatically flagged as 'suspicious content,'" among other complaints. (*Id.* at ¶34.) Plaintiff alleges that "Defendants Biden and Murthy directed Defendants Facebook and Twitter to remove [her] social media posts because they disagreed with the viewpoints she espoused in them." (*Id.* at ¶46.) Because of this alleged coordination between the federal Defendants and Meta and X Corp., Plaintiff alleges that "Facebook and Twitter engaged in state action when they removed posts like [Plaintiff's] at the request of Murthy and Biden based on the viewpoint of those posts." (*Id.* at ¶69.) For these alleged harms, Plaintiff seeks declaratory and injunctive relief against all defendants, as well as "compensatory and nominal damages" from Meta and X Corp. (*Id.* at ¶¶75-76.)

---

[2] Though Plaintiff does not define the term, she alleges that, as a result of being shadow-banned by Twitter, "her posts cannot be seen by anyone who was not already following her, and any post or information she sends from her Twitter account is flagged as 'dangerous', are hidden, or simply blocked altogether." (Compl. at ¶8.)
[3] Plaintiff refers to Defendant X Corp. as "Twitter" throughout the Complaint, alleging that X Corp. was "formerly Twitter." (Compl. at ¶11.)

**B.    Procedural Background**

Plaintiff initially instituted this action on October 7, 2023, but failed to provide a completed civil cover sheet to the Clerk's Office.  The Clerk's Office provided notification on the docket to Plaintiff three times, warning in the final notice that "[i]f in 30 days of the filing date (11/6/2023), we do not receive the completed and needed form, this case will be administratively closed."  (Docket Entry dated October 16, 2023.)  Plaintiff ultimately filed a civil cover sheet on October 27, 2023, but failed to provide proposed summonses for each defendant.  (ECF No. 2.)  After notice from the Clerk's office, Plaintiff provided proposed summonses, which were issued on October 30, 2023, as to each of the Defendants.  (ECF Nos. 6-9.)

Plaintiff failed to file any proof of service on the docket to show that the summons and complaint had been served, but Defendants Meta and X Corp. nonetheless appeared on December 11, 2023, and December 6, 2023, respectively.  (ECF Nos. 11-12, 16-17.)  After receiving extensions from the Court, Defendants Meta and X Corp. both moved on January 24, 2024, for a pre-motion conference to discuss an anticipated motion to transfer venue to the Northern District of California.  (ECF Nos. 20-21.)  The Court waived the pre-motion conference requirement, and set a briefing schedule for the motion to transfer venue.  (Docket Order dated February 13, 2024.)  Subsequently, Judge Nusrat Jahan Choudhury

was recused, and the case was reassigned to the undersigned for all further proceedings.  (Order of Recusal dated March 18, 2024.)

Prior to March 22, 2024, Plaintiff had failed to file any proof of service of process with the Court regarding any of the four defendants in this action.  On March 22, 2024, this Court ordered Plaintiff to show cause "why this case should not be dismissed without prejudice against all Defendants for whom the docket lacks proof of service of process because Plaintiff has failed to serve defendants in accordance with [Fed. R. Civ. P.] 4(m)" and requesting proof of service on each Defendant, with a response deadline of March 29, 2024.  (Docket Order dated March 22, 2024.)  Plaintiff's counsel responded by filing four separate affidavits of service as to each Defendant, including Defendants Murthy and Biden, showing the federal Defendants were served on November 15, 2023, within the time limit specified by Fed. R. Civ. P. 4(m).  (ECF Nos. 28, 29.)

On April 1, 2024, to clarify whether proper service was effectuated upon the US Attorney for the Eastern District of New York, as required by Fed. R. Civ. P. 4(i)(1)(A), the Court ordered Plaintiff to file a supplemental response by April 8, 2024, including "1) a letter to the Court from Plaintiff's counsel explaining why service on the Surgeon General and President was proper; and (2) documentary evidence in support, including, but not limited to, the certified mail receipts showing the addresses

5

to which each copy of the summons and complaint were mailed." (Docket Order dated April 1, 2024.)  Plaintiff's counsel responded on April 8, 2024, with a letter and several mail receipts.  (ECF No. 30.)

Also on April 8, 2024, Defendants Meta and X Corp. filed their fully-briefed motions to transfer venue.[4]  (ECF No. 31, Defendant Meta's Motion to Change Venue; ECF No. 35, Defendant X Corp's Motion to Change Venue.)  Plaintiff had previously filed her opposition to Meta's motion directly on the docket on March 22, 2024.  (ECF No. 25, Plaintiff's Memorandum in Opposition ("Pl. Opp.").)  Plaintiff did not oppose X Corp.'s motion within the deadline provided by the briefing schedule, and has not requested an extension of time in which to oppose the motion.  (ECF No. 36, X Corp.'s Letter regarding Plaintiff's Non-Opposition.)

## II.  LEGAL STANDARD

### A.  Motion to Transfer Venue

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  Although the typical § 1404(a)

---

[4] This Court's Memorandum and Order does not decide whether service on Meta and X Corp. was proper, and does not address whether those defendants waived any defenses relating to service.

analysis involves a balancing of various interests, "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atlantic Marine Construction Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59–60 (2013) (citation omitted) (hereafter, "*Atlantic Marine*"). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* at 62. "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.*

A forum-selection clause affects the typical § 1404(a) analysis in three ways, beyond creating a presumption in favor of transfer: (1) "the plaintiff's choice of forum merits no weight," and "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted"; (2) "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests" and may only consider the public-interest factors, which "will rarely defeat a transfer motion"; and (3) "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.* at 63–64.

7

"Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."   *Id.* at 62 n.6. (internal quotation marks and citation omitted).   "Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* (internal quotation marks and citation omitted).

### B.   Dismissal Pursuant to Fed. R. Civ. P. 4(m)

"Federal Rule of Civil Procedure 4(m) governs both (1) the dismissal of actions for untimely service of process and (2) extensions of the time in which service may be effected." *Zapata v. City of New York*, 502 F.3d 192, 195 (2d Cir. 2007).   Under the rule,

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).   A district court exercises discretion in determining "whether good cause is present (and, if so, how long an extension would be appropriate)." *Zapata,* 502 F.3d at 197.   In the absence of good cause, "a district court may grant an extension . . . but it is not required to do so." *Id.* "As indicated by the plain language of Rule 4(m), notice to the plaintiff must be given prior to a *sua sponte* dismissal [by the district court]." *Thompson v. Maldonado*, 309 F.3d 107, 110 (2d Cir. 2002).

## III. DISCUSSION

### A.   Motion to Transfer Venue

Defendants Meta and X Corp. both argue that their terms of service[5] contain a valid, mandatory, and enforceable forum selection clause prescribing the Northern District of California as the "exclusive" forum for disputes related to the use of their services.   (ECF No. 31-1, Defendant Meta's Memorandum of Law ("Meta Mem."), at 4-7; ECF No. 35-1, Defendant X Corp.'s Memorandum of Law ("X Corp. Mem."), at 3.)

Defendant Meta states that "Plaintiff's use of Facebook is governed by Meta's Facebook Terms of Service [], a fully-integrated

---

[5] Plaintiff's complaint relies extensively on, and incorporates by reference, Facebook's Terms of Service and Community Standards.   (Compl. at ¶¶52-54.)   Both Meta's and X Corp.'s publicly available terms of service are subject to judicial notice. *See* Fed. R. Evid. 201(b)(2); *see also, e.g., Force v. Facebook, Inc.*, 934 F.3d 53, 59, n.5 (2d Cir. 2019) (holding that Facebook's publicly available terms are subject to judicial notice); *23-34 94th St. Grocery Corp. v. N.Y.C. Bd. of Health*, 685 F.3d 174, 183 n.7 (2d Cir. 2012) (taking judicial notice of content of website whose authenticity was not in question).

written contract to which all Facebook users must agree as a condition for their use of Facebook." (Meta Mem. at 3.) The Facebook Terms of Service, both in their current form and in the form effective from October 22, 2020, to July 26, 2022,[6] contain a forum-selection clause prescribing the "U.S. District Court for the Northern District of California or a state court located in San Mateo County" as the exclusive venue for resolution of disputes arising out of the Facebook Terms of Service or the Meta/Facebook products. *See Terms of Service*, Facebook, https://www.facebook.com/legal/terms (last visited April 11, 2024).

Defendant X Corp. states that "[b]y creating and using her Twitter account, [Plaintiff] repeatedly agreed to Twitter's Terms of Service." (X Corp. Mem. at 2.) X Corp. further explains that "[a]t all relevant times[7], the Twitter Terms of Service have

---

[6] Meta's Motion to Transfer Venue includes a declaration from a Meta employee regarding Facebook's Terms of Service, to which a copy of the October 22, 2020, terms of service are annexed as Exhibit A. (ECF No. 31-2, Declaration of Jennifer Pricer; ECF Nos. 31-3 and 31-4, Exhibits A and B to the Pricer Declaration.) The declaration further explains that Facebook's Terms of Service include a clause stating that the terms may be updated, and that a user assents to the modified terms by continuing to use the product. (*Id.* at ¶8.) It is not clear from the Complaint whether Plaintiff subsequently attempted to utilize her account after it was "suspended" in October 2021, (Compl. at ¶¶25, 30), making her subject to the current terms of service, but regardless of whether the October 22, 2020, or the July 26, 2022, terms apply, the forum selection provision is the same.

[7] X Corp's Motion to Transfer Venue includes a declaration from X Corp.'s counsel of record in the instant action, to which several versions of Twitter's terms of service, sign-up pages, and corporate documents she attests are "true and accurate" copies are annexed. (ECF No. 35-2, Declaration of Emily Barnett; ECF Nos. 35-3 – 35-13, Exhibits A through K to the Barnett Declaration.) Twitter's terms of service include a provision stating that any individual utilizing the service agrees to be bound by the terms of service currently in effect. (*See*

included a forum-selection clause requiring any disputes related to the Twitter service to be brought solely in the federal or state courts located in San Francisco County, California." (*Id.* at 3.) In relevant part, Twitter/X's current terms of service state that "[a]ll disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California, United States, and you consent to personal jurisdiction and waive any objection as to inconvenient forum." *Terms of Service,* X, https://twitter.com/en/tos (last visited April 11, 2024).

Both Meta and X Corp. also argue, and Plaintiff does not contest, that Plaintiff's claims against both defendants could "have been brought" in the Northern District of California, where both companies are headquartered, as required for transfer under 28 U.S.C. § 1404(a). (Meta Mem. at 8; X Corp. Mem at 12.) Meta and X Corp. also argue, and Plaintiff does not contest, that the Northern District of California is an appropriate venue for litigation against the federal defendants, pursuant to 28 U.S.C. § 1391(e). (*Id.*) The Court finds that the instant action could have been brought in the Northern District of California, given

---

X Corp. Mem. at 7 n.8, n.9.) Plaintiff's complaint alleges that the Twitter "shadow-banning" has continued through the present day, (Compl. at ¶8), so the Court will assume that the current terms of service apply, but X Corp. notes that the forum selection clause in force throughout the entire period of Plaintiff's utilization of the service would have the same effect, (X Corp. Mem. at n.9).

both Meta and X Corp. have their principal place of business in the district.

Under Second Circuit law, a forum selection clause is "presumptively enforceable" if it was (1) "communicated to the resisting party," (2) "has mandatory force," and (3) "covers the claims and parties involved in the dispute." *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014). "A party can overcome this presumption only by (4) 'making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007)).

*First*, the Court finds that the forum selection clause was communicated to Plaintiff. Both Meta and X Corp. argue that Plaintiff assented to their respective terms of service at the time she registered her account with each platform. (Meta Mem. at 5, X Corp. Mem. at 6.) Plaintiff does not dispute this argument in her opposition to Meta's motion, and, as noted above, Plaintiff failed to oppose X Corp.'s motion to transfer venue, and "effectively concedes [X Corp.'s] arguments by [her] failure to respond to them." *Felske v. Hirschmann*, No. 10-CV-8899 (RMB), 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012). Meta also provides citations to other non-binding decisions from within the Second Circuit finding a plaintiff's agreement to the Facebook Terms of

Service "more than sufficient to establish that Plaintiffs 'assented to the Terms of Use and therefore to the forum selection clause therein.'" *We Are the People, Inc. v. Facebook, Inc.*, No. 19-CV-8871 (JMF), 2020 WL 2908260, at *2 (S.D.N.Y. June 3, 2020) (quoting *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839-41 (S.D.N.Y. 2012)).  The Court finds that the documentary evidence provided by Defendants Meta and X Corp., which it may appropriately consider either because the documents are incorporated into the complaint by reference or by taking judicial notice of the contents of public documents on the X Corp. and Meta websites that are not in dispute, *23-34 94th St. Grocery Corp. v. N.Y.C. Bd. of Health*, 685 F.3d 174, 183 n.7 (2d Cir. 2012), establish that the forum selection clause for each service was appropriately communicated to Plaintiff when she signed up to use Meta and X Corp.'s services.

*Second*, the Court finds that both Meta and X Corp.'s forum selection clauses are mandatory in nature.  Meta's clause states that disputes "shall be resolved exclusively" in the stated forum, *Terms of Service*, Facebook, https://www.facebook.com/legal/terms (last visited April 11, 2024), and X Corp.'s clause states that disputes "will be brought solely" in the stated forum, *Terms of Service,* X, https://twitter.com/en/tos (last visited April 11, 2024).  Plaintiff makes no argument that the forum selection clause is permissive in her opposition to Meta's motion.

13

*Third,* the Court finds that the Plaintiff's claims are subject to Meta and X Corp.'s forum selection clauses.  Meta's clause states that it applies to "any claim, cause of action, or dispute between us that arises out of or relates to these Terms or your access or use of the Meta Products." *Terms of Service*, Facebook, https://www.facebook.com/legal/terms (last visited April 11, 2024).  X Corp.'s clause states that it applies to "[a]ll disputes related to these Terms or the Services," and Services is defined as "our various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and our other covered services . . . that link to these Terms." Terms of Service, X, https://twitter.com/en/tos (last visited April 11, 2024).  Plaintiff's complaint alleges that "Defendant Facebook, Inc. . . . closed [Plaintiff's] Facebook account" and "Twitter, in more insidious fashion, has severely shadow banned [Plaintiff's] Twitter Account."  (Compl. at ¶¶6, 8.)  Therefore, Plaintiff's claims are clearly related to her "use of" a Meta product—Facebook—and to the X Corp./Twitter "services."  Accordingly, the Court finds that Plaintiff's claims are subject to her agreement to Meta and X Corp.'s forum selection clauses.

Because the Court has found the forum selection clause to be presumptively enforceable, it is Plaintiff's burden "to rebut the presumption" that the forum selection clause is enforceable "by . . . making a sufficiently strong showing that enforcement would

14

be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Martinez*, 740 F.3d at 217 (internal quotation marks and citation omitted); *see also Atlantic Marine*, 571 U.S. at 63 ("the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted").   Plaintiff fails to make such a showing.

Plaintiff argues that she "did not have the benefit of negotiating the terms of the [terms of service]," (Pl. Opp. at 3), but that same argument has been considered, and rejected, numerous times by courts evaluating the terms of service for internet-based services.   The Second Circuit discussed the topic in depth in *Register.com, Inc. v. Verio, Inc.*:

> While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract. It is standard contract doctrine that when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree. . . .
>
> Returning to the apple stand[8], the visitor, who sees apples offered for 50 cents apiece and takes an apple, owes 50 cents, regardless whether he did or did not say, "I agree." The choice offered in such circumstances is to take the apple on the known terms of the offer or not to take the apple. As we see it, the defendant in *Ticketmaster* and Verio in this case had a similar choice. Each was offered access to information subject to terms of which they were well aware. Their choice was either

---

[8] A metaphor previously discussed in the opinion. *Register.com, Inc.*, 356 F.3d at 401.

> to accept the offer of contract, taking the information subject to the terms of the offer, or, if the terms were not acceptable, to decline to take the benefits.

*Id.*, 356 F.3d 393, 403 (2d Cir. 2004); *see also Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 841 (S.D.N.Y. 2012) (concluding that Plaintiff, an active user of Facebook, assented to the Facebook Terms of Use, and thus to the forum selection clause therein).

Plaintiff's makes no further arguments to attempt to rebut the validity or enforceability of the forum selection clause, and argues only that public and private interest factors militate against transfer. (Pl. Opp. at 2-4.) This Court may not consider Plaintiff's arguments that the private interest factors weigh against transfer. *Atlantic Marine,* 571 U.S. at 64 ("a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests"). Instead, the Court may only "consider arguments about public-interest factors" which "will rarely defeat a transfer motion." *Id.* Plaintiff argues that her case is a "special situation, as it implicates infringement of constitutional rights," (Pl. Opp. at 1), but fails to state why a federal district court in California, which is equally competent to decide questions of Constitutional law, would be unable to adjudicate her claims. The Court is unaware of any other public interest that militates in favor of keeping Plaintiff's case in New York, given "[t]he only apparent nexus between the facts

alleged in this lawsuit and the state of New York is Plaintiff's personal proximity." *Melwani v. Amazon.com, Inc.*, No. 20-CV-09739 (AJN), 2021 WL 4429604, at *5 (S.D.N.Y. Sept. 27, 2021).

Plaintiff's remaining arguments implicate only the private-interest factors, arguing that transfer would be "unduly prejudicial" and that "most witnesses and relevant documents" are located "on the East Coast." (Pl. Opp. at 2-3.) As noted *supra*, the Court may not consider private-interest factors, and Plaintiff fails to show that her case is the uncommon case in which public-interest factors defeat a transfer motion. Therefore, the Court must, and will, transfer the instant case to the Northern District of California under 28 U.S.C. § 1404(a).

**B.   Failure to Serve Federal Defendants**

Plaintiff filed the Complaint in the instant case on October 7, 2023. (*See generally* Compl.) Pursuant to Federal Rule of Civil Procedure 4(m), Plaintiff was required to serve each Defendant in the instant action with a summons and complaint by no later than January 5, 2024.   Plaintiff failed to properly serve Defendants Murthy and Biden, and the action is dismissed against both Defendants.

As discussed *supra*, Plaintiff failed to file proof of service on any of the Defendants in this action prior to the Court's March 22, 2024, Order to Show Cause.   Subsequently, Plaintiff filed affidavits of service as to all four defendants, representing that

17

Defendant Meta was served on November 22, 2023, Defendant X Corp. was served on November 17, 2023, Defendant Biden was served on November 15, 2023, and Defendant Murthy was served on November 15, 2023. (ECF Nos. 26-29.) Plaintiff's supplemental response dated April 8, 2024, (ECF No. 30), makes clear that the Affidavits of Service filed as to Defendant Murthy, (ECF No. 29), and Defendant Biden, (ECF No. 28), were factually inaccurate.

*First*, contrary to the assertions by Plaintiff's process server that, for each federal Defendant, he "[s]erved [the] Civil Process Clerk for the US Attorney via Certified Mail" on November 15, 2023, Plaintiff's supplemental response states that the process server did not send the summons and complaint via *registered* mail to the US Attorney until January 30, 2024.[9] (*See* ECF Nos. 28, 29, 30.) Plaintiff offers no explanation for the factual discrepancy between the affidavit and the proof of mailing. In any event, Plaintiff's service is untimely pursuant to Fed. R. Civ. P. 4(m), which required service on or before January 5, 2024, and Plaintiff provides no explanation or good cause for the delay in mailing the US Attorney's office's civil process clerk, a

---

[9] Though the Federal Rules of Civil Procedure permit service via registered mail or certified mail, certified mail is generally favored for service of process because it allows the sender to "[s]ee when it was delivered or that a delivery attempt was made," whereas registered mail instead offers "maximum security for [] valuable items" and can be "insured for up to $50,000." USPS, *Insurance & Extra Services*, https://www.usps.com/ship/insurance-extra-services.htm (last visited April 9, 2024).

required task in serving a federal officer in an action against the United States and/or its officials.

*Second*, contrary to the assertion of Plaintiff's process server that the Attorney General was served "via Certified Mail" on November 15, 2023, as required by Fed. R. Civ. P. 4(i)(1)(B), Plaintiff provides no proof of any mailing to the Attorney General. Again, Plaintiff has provided no explanation for the inconsistency between the affidavit of service and the supplemental response, or for the apparent failure to serve the Attorney General as clearly required by the Federal Rules of Civil Procedure when serving the United States and/or its officials named in their official capacities. *See* Fed. R. Civ. P. 4(i)(1)(b), 4(i)(2). "In order to serve process on the United States, a party must deliver a copy of the summons and complaint to the United States Attorney for the district in which the action is brought, and . . . send a copy of the summons and complaint by registered or certified mail to the Attorney General." *Kurzberg v. Ashcroft*, 619 F.3d 176, 184 (2d Cir. 2010) (citing Fed. R. Civ. P. 4(i)(1)(A–B)); *see also* Fed. R. Civ. P 4(i)(2). Because Plaintiff failed to serve the Attorney General, she failed to properly serve the United States officials named as Defendants, as required for both of the federal Defendants.

*Third*, contrary to the assertion of Plaintiff's process server that both Defendant Murthy and Defendant Biden were served

via certified mail on November 15, 2023, Plaintiff admits in the supplemental response that Defendant Biden was not served via certified mail until March 27, 2024, long after the 90 days prescribed by Fed. R. Civ. P. 4 and *after* the Court requested proof of service on all Defendants.  (ECF No. 30 at 1.)  Furthermore, Plaintiff admits that Defendant Murthy has yet to be served at all.  (*Id.*)

Plaintiff's discussion of attempted personal service on the President and Surgeon General is of no moment and does not establish good cause for the failure to serve process.  Plaintiff brought the instant action against both Defendants *in their official capacities*.  (*See* Compl. at ¶¶12, 13.)  To serve a United States officer or employee in an official capacity, "a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the . . . officer, or employee."  Fed. R. Civ. P. 4(i)(2).  Plaintiff cites to Fed. R. Civ. P. 4(i)(3), but that subsection of the rule applies only to officers or employees "sued in an individual capacity."  As such, Plaintiff's efforts to serve the individual Defendants via personal service would not have constituted proper service even if service had been effectuated, given both federal Defendants were sued "only in an official capacity."  Fed. R. Civ. P. 4(i)(2).

Pursuant to "Rule 4(m), notice to the plaintiff must be given prior to a *sua sponte* dismissal [by the Court]."  *Thompson v.*

20

*Maldonado*, 309 F.3d 107, 110 (2d Cir. 2002).  The Court provided notice to Plaintiff on March 22, 2024, when it ordered the Plaintiff to show cause "why this case should not be dismissed without prejudice against all Defendants for whom the docket lacks proof of service . . . in accordance with Rule 4(m)."  (Docket Order dated March 22, 2024.)  Plaintiff's response consisted of affidavits of service which are demonstrably false, and a subsequent supplemental response which offers no explanation for the Plaintiff's inconsistent representations regarding service and no "good cause" for the failure to serve the federal Defendants beyond, at best, a failure to understand the process for serving a United States officer or employee in their official capacity.  (ECF Nos. 28, 29, 30.)  "Attorney error does not constitute good cause under Rule 4(m)."  *Counter Terrorist Grp. U.S. v. New York Mag.*, 374 F. App'x 233, 235 (2d Cir. 2010) (Summary order).[10]  The

---

[10] As set forth in the "court ordered disclosure" annexed to the Complaint, Plaintiff's counsel has been sanctioned pursuant to Fed. R. Civ. P. 11 by United States District Judge Lewis J. Liman of the Southern District of New York in *Gong v. Sarnoff et al,* Docket 23-cv-343 (LJL). While it was not the sole reason for sanctions, Judge Liman noted in his opinion and order that Plaintiff's counsel failed to serve all defendants within 90 days as required by Fed. R. Civ. P. 4(m).  *Gong v. Sarnoff et al,* ECF No. 72, at 33 (S.D.N.Y. August 22, 2023).  The Court notes that Plaintiff's counsel was also ordered by Judge Liman in the same case to "show cause why his assertion in the motion and in the memorandum that service was properly effectuated . . . did not violate Rule 11(b)(3) when (1) the person who was served is not the individual identified in the complaint; [and] (2) Plaintiff had been informed by the affidavit of service of the appearance of the person who was served [and] that person does not resemble the person who committed the torts alleged in the complaint."  *Id.*, ECF No. 90 (S.D.N.Y. November 6, 2023).  Judge Liman declined to issue separate sanctions for the assertions related to service but dismissed the complaint against the defendant without prejudice pursuant to Fed. R. Civ. P 4(m).  *Gong v. Sarnoff*, 2023 WL 8096970, at *3 (S.D.N.Y. Nov. 21, 2023).

Second Circuit has held that "a district court *may* grant an extension in the absence of good cause, but it is not required to do so." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007).

As such, "[i]n the absence of good cause, the Court's authority to grant an extension of the time for service of process 'is purely discretionary.'" *Deptula v. Rosen*, 558 F. Supp. 3d 73, 89 (S.D.N.Y. 2021) (quoting *Counter Terrorist Grp. U.S.*, 374 F. App'x at 235). Here, the Court declines to grant an extension of the time to serve federal Defendants Murthy and Biden, and they are dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m). As discussed previously, Plaintiff's counsel's allegations that his efforts at personal service were stymied is irrelevant to the matter at hand, given personal service is neither specifically authorized nor deemed sufficient for federal officers or employees sued in an official capacity. Fed. R. Civ. P. 4(i)(2). Any prejudice Plaintiff will suffer based on the dismissal without prejudice of the federal Defendants is outweighed by Plaintiff's ongoing neglect and questionable candor with the Court regarding the ongoing failure to properly serve either federal Defendant with process more than three months after the deadline set forth in Fed. R. Civ. P. 4(m).[11]

_____

[11] The Court notes that Plaintiff's 42 U.S.C. § 1983 claim against the federal defendants is fatally flawed, and could not proceed because "Section 1983 does

## IV.   CONCLUSION

For the foregoing reasons, Defendants Meta and X Corp.'s motions to transfer venue are GRANTED, and Plaintiff's action is DISMISSED without prejudice against Defendants Biden and Murthy for failure to serve either defendant within 90 days as required by Fed. R. Civ. P. 4(m).

The Clerk of Court is respectfully directed to terminate Defendants Biden and Murthy, and transfer this case to the Northern District of California.


**SO ORDERED**

Dated:       April 15, 2024
             Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

---

not provide a cause of action against the federal government" or its officials. *Guettlein v. United States Merch. Marine Acad.*, 577 F. Supp. 3d 96, 102 (E.D.N.Y. 2021); *see also Arar v. Ashcroft*, 585 F.3d 559, 568 (2d Cir. 2009) ("A federal officer who conspires with a state officer may act under color of state law, but since federal officials typically act under color of federal law, they are rarely deemed to have acted under color of state law.") (internal quotation marks and citation omitted); 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, *of any State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . .") (emphasis added).